<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CONNIE HERNANDEZ, et al., | : | |
| Plaintiffs, | : | Civ. No. 04-4885 (GEB) |
| v. | : | **MEMORANDUM OPINION** |
| MICHAEL A. GENTILE, et al., | : | |
| Defendants. | : | |

**<u>BROWN, Chief Judge</u>**

  This matter comes before the Court upon: (1) the defendants' motions to dismiss; and (2) the plaintiffs' cross-motion for leave to file a second amended complaint and to serve it upon the defendants. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The action was reassigned to the undersigned on August 7, 2006, and the Court, having read and fully considered all of the parties' submissions, has decided this matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78. For the reasons set forth below, the Court will: (1) grant the defendants' motions to dismiss; and (2) grant in part and deny in part the plaintiffs' cross-motion.

**I. BACKGROUND**

  **A. The Parties**

  Plaintiffs Connie Hernandez and L'Oreal Diaz (collectively "Plaintiffs") are both residents of New Jersey. (SAC ¶¶ 1-2.) Defendant Leeds, Morelli & Brown, P.C. ("Leeds

Morelli") is a law firm located in Nassau County, New York.  (*Id.* ¶ 3.)  Defendant Benjamin, Brotman & Associates ("BBA") is a law firm located in New York, New York, and is the successor to Benjamin, Brotman & Maltz, LLP ("BBM"), and to Gentile, Brotman, Maltz & Benjamin ("GBMB").  (*Id.* ¶ 4; BBA Br. 1.)  According to the SAC, during the relevant times, Michael Gentile was a resident of New York and an attorney at GBMB.  (*Id*. ¶¶ 5, 9.)  Plaintiffs also allege that, during the relevant times, Lenard Leeds, Steven A. Morelli, and Jeffrey K. Brown were residents of New York and attorneys at Leeds Morelli.  (*Id.* ¶¶ 5-8.)  BBA, Leeds Morelli, and Messrs. Gentile, Leeds, Morelli, and Brown are the named defendants in this case (collectively "Defendants").

        **B.**      **Plaintiffs' Claims Against Defendants**

Plaintiffs make the following allegations.  According to the SAC, in 1997, Plaintiffs retained Leeds Morelli in a racial discrimination and sexual harassment lawsuit that they filed against Prudential Securities, Inc. ("PSI") ("PSI Lawsuit").  (*Id.* ¶ 12.)  The case was resolved, and pursuant to its agreement with Plaintiffs, Leeds Morelli received one third of the recovery.  (*Id.* ¶¶ 13-14.)  In or about July 2000, Ms. Hernandez learned of a newspaper article in the New York Times containing a description by Mr. Gentile of attorney misconduct by the attorneys at Leeds Morelli.  (*Id.* ¶ 17.)  According to the SAC, in or about November 2000, Ms. Hernandez contacted Mr. Gentile and the predecessor to GBMB, where Mr. Gentile was employed at the time.  (*Id.* ¶ 18.)  Mr. Gentile allegedly informed Ms. Hernandez that she might have a claim against Leeds Morelli for having "improperly received excessive and improper compensation" during their representation of her in the PSI Lawsuit.  (*Id.*)  Ms. Hernandez and Ms. Diaz both

retained Mr. Gentile and GBMB to represent them in a lawsuit against Leeds Morelli ("Leeds Morelli Lawsuit").  (*Id.* ¶¶ 18-19.)

According to the SAC, in or about October 2001, Mr. Gentile recommended to Plaintiffs that they settle their claims against Leeds Morelli for less than the amount of legal fees that the firm had charged Plaintiffs in the PSI Lawsuit, and Plaintiffs settled the case pursuant to Mr. Gentile's advice.  (*Id.* ¶¶ 20, 23.)  Plaintiffs allege that Mr. Gentile failed to provide information to them concerning the details of Leed Morelli's conduct and the relief that Plaintiffs were entitled to seek.  (*Id.* ¶¶ 20-21.)  Plaintiffs further allege that Mr. Gentile "received payment from Leeds-Morelli directly as part of the settlement negotiations on behalf of Plaintiffs . . . ."  (*Id.* ¶¶ 25-28.)

Plaintiffs allege that in November 2002, Ms. Hernandez "became aware, through news stories, of other allegations of unethical conduct regarding Leeds-Morelli receiving direct, secret payment from companies it had been retained to sue."  (*Id.* ¶ 29.)  Plaintiffs claim that Ms. Hernandez discussed the matter with Mr. Gentile, but that he discouraged her from taking any action.  (*Id.* ¶¶ 30-31.)  According to the SAC, in December 2003, Ms. Hernandez "learned . . . that [Mr.] Gentile and [BBM] were 'ethics counsel' to [Leeds Morelli], and had been [since] 2002.  (*Id.* ¶ 33.)  Plaintiffs allege, upon information and belief, that Mr. Gentile received payment from Leeds Morelli during his representation of Plaintiffs in the Leeds Morelli Lawsuit.  (*Id.* ¶¶ 35-36.)

Plaintiffs filed the Complaint in this action on October 4, 2004.  On November 4, 2004, Plaintiffs filed an Amended Complaint.  Plaintiffs did not properly serve the Complaint or the Amended Complaint on several of the Defendants, including Mr. Gentile, Leeds Morelli, and the

3

individual Defendants affiliated with Leeds Morelli. On March 7, 2005, Plaintiffs filed a Second Amended Complaint ("SAC"), but without leave by the Court to do so.

On June 16, 2005, BBA filed its motion to dismiss. On the same date, Leeds Morelli, Mr. Leeds, Mr. Morelli, and Mr. Brown jointly filed a separate motion to dismiss, and Mr. Gentile filed a joinder to that second motion. On July 7, 2005, Plaintiffs filed opposition papers to Defendants' motions to dismiss, and filed a cross-motion for leave to file the SAC and to serve it upon Defendants. On August 7, 2006, this action was reassigned to the undersigned. Briefing on Defendants' motions to dismiss and Plaintiffs' cross-motion having been completed, the Court will now address those motions.

## II.   DISCUSSION

### A.   Plaintiffs' Cross-Motion for Leave to File the Second Amended Complaint

Defendants' motions to dismiss are based primarily on arguments that this Court lacks personal jurisdiction over them. To determine whether Defendants are correct, the Court must refer to the allegations in the Complaint. On March 7, 2005, Plaintiffs filed, without leave by the Court, the SAC. In their briefs, Plaintiffs have failed to provide any explanation as to why the Court should grant them leave to file the SAC. Nonetheless, Federal Rules of Civil Procedure Rule 15(a) provides that leave to amend the complaint should be "freely given," and the Court will therefore grant Plaintiffs' cross-motion for leave to file the SAC. The Court will therefore rely on the allegations contained in the SAC in deciding Defendants' motions to dismiss.

### B. Defendants' Motions to Dismiss

#### 1. Due Process Limitations on Personal Jurisdiction

Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, district courts have personal jurisdiction over non-resident defendants to the extent authorized under the law of the forum state in which the district court sits. Fed. R. Civ. P. 4(e). New Jersey's long-arm statute extends personal jurisdiction to the fullest limits of due process. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). The Court will therefore consider the constitutional limitations on the exercise of personal jurisdiction over Defendants in this case.

"The due process limit to the exercise of personal jurisdiction is defined by a two-prong test." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1995). "First, the defendant must have made constitutionally sufficient 'minimum contacts' with the forum." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Determining whether there are minimum contacts requires examination of "the relationship among the defendant, the forum, and the litigation." *IMO Indus.*, 155 F.3d at 259 (internal quotations omitted). "There must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.'" *Vetrotex*, 75 F.3d at 150 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "Second, if 'minimum contacts' are shown, jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Once the defendant moves to dismiss, the plaintiff has the burden of coming forth with "competent evidence" demonstrating that personal jurisdiction exists. *B.P. Chems. Ltd. v.*

*Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000).

Personal jurisdiction may be either specific or general. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). "Specific jurisdiction is established when a non-resident has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *Id.* (quoting *Burger King*, 471 U.S. at 472). "Specific jurisdiction exists only where the defendant has sufficient minimum contacts with the forum state that it 'should reasonably anticipate being haled into court there.'" *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3d Cir. 1993) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "This limitation on personal jurisdiction lends predictability to the legal system by permitting potential defendants to structure their conduct with at least some assurances as to where that conduct may render them liable to suit." *Rees v. Mosaic Techs., Inc.*, 742 F.2d 765, 768 (3d Cir. 1984).

In cases involving claims that relate to or arise from a contract relationship, "[a]ctual presence during pre-contractual negotiations, performance, and resolution of post-contract difficulties is generally factored into the jurisdictional determination." *See Gen. Elec.*, 270 F.3d at 150. *See also Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 1991); *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223-24. "Specific jurisdiction frequently depends on physical contacts with the forum." *Gen. Elec.*, 270 F.3d at 150. "Parties who 'reach out beyond [their] state and create continuing relationships and obligations with citizens of another state' are subject to the regulations of their activity in that undertaking." *Id.* (quoting *Burger King*, 471 U.S. at 473). The Third Circuit Court of Appeals has held that "'informational communications in furtherance of [a contract between a resident and a non-resident] does not

6

establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the non-resident defendant].'" *Vetrotex*, 75 F.3d at 152 (quoting *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993)). *See also IMO Indus.*, 155 F3d at 259 n.3 (holding that "minimal communication between the defendant and the plaintiff in the forum state, without more, will not subject the defendant to the jurisdiction of that state's court system"). "In modern commercial business arrangements, however, communication by electronic facilities, rather than physical presence, is the rule." *Gen. Elec.*, 270 F.3d at 150-51. In such cases, "actual territorial presence becomes less determinative." *Id.* at 151.

In additional to specific jurisdiction, a court may also exercise general jurisdiction over the defendant if the defendant has maintained contacts that are "'continuous and systematic.'" *B.P. Chems.*, 229 F.3d at 259 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). To establish general jurisdiction, "the plaintiff must show significantly more than mere minimum contacts" with the forum state. *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). The facts required to establish general jurisdiction must be "extensive and persuasive." *Reliance Steel Prods. Co. v. Watson, Ess, Marshall, and Enggas*, 675 F.2d 587, 589 (3d Cir. 1982).

## 2. Whether the Court Has Specific Jurisdiction Over Defendant BBA

The facts in *Reliance Steel* are similar to those of the present case. There, the plaintiff was a Pennsylvania corporation asserting breach of contract and negligence claims against a Missouri law firm that had represented it in a lawsuit in Kansas. *Reliance Steel*, 675 F.2d at 587-89. The plaintiff brought suit in a Pennsylvania state court, and the defendant removed the case

to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1441. *Id.* at 588. The district court dismissed the case for lack of personal jurisdiction over the defendant, and the plaintiff appealed. *Id.*

The Third Circuit Court of Appeals affirmed the district court's dismissal of the case. With respect to the plaintiff's claim that the district court had specific jurisdiction, the court observed that the plaintiff "base[d] [its] argument on the allegation that [the defendant] negligently delivered legal advice into Pennsylvania by telephone and subsequently billed the client in Pennsylvania and that any willing representation of a Pennsylvania client makes the firm amenable to personal jurisdiction in that state." *Id.* at 589.

The court found, however, that "to accept this theory [it] must totally disregard the operative facts that the plaintiff seeks to establish to win its case on the merits." *Id.* The court described the nature of the plaintiff's action, namely, that it concerned the defendant's alleged representation of the plaintiff in a "replevin action to recover 37 steel panels that [the plaintiff] had sold for the construction of a highway in Kansas." *Id.* According to the court:

> [I]t is undeniable that the state with the least significant contacts is Pennsylvania. The res of the action was located in Kansas, the replevin bond in issue was negotiated in Kansas, an ex parte order of replevin was issued by a Kansas judge.

*Id.*

In the SAC, Plaintiffs assert the following claims: (1) fraud; (2) breach of fiduciary duty; (3) attorney misconduct; (4) tortious interference; (5) breach of contract; and (6) negligence. Plaintiffs' claims are based on Defendants' alleged misconduct during their legal representation of Plaintiffs in the Leeds Morelli Lawsuit. Plaintiffs identify a number of actions by Defendants that they claim constitute the required minimum contacts for purposes of specific jurisdiction.

8

(Pls.' Br. 10.)  Specifically, Plaintiffs refer to:  (1) a retainer agreement dated November 22, 2000 that was sent to Ms. Hernandez in New Jersey; (2) correspondence and telephone communications between Defendants and Ms. Hernandez while she was located in New Jersey; and (3) checks that Defendants sent to Ms. Hernandez in New Jersey.

These actions alone do not support personal jurisdiction over Defendants.  First, with respect to the retainer agreement, the fact that a party in the forum state retains a lawyer from a non-forum state does not, without more, establish personal jurisdiction over the lawyer.  *See Reliance Steel*, 675 F.2d at 589.  As for the correspondence and telephone communications, they constituted "informational communications in furtherance of [the retainer]" and "do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction . . . ."  *Sunbelt*, 5 F.3d at 32.  Finally, with respect to the mailed checks, they were also made pursuant to the retainer agreement, and do not constitute the requisite purposeful activity.

Plaintiffs assert claims against Defendants for their alleged conduct during their legal representation of Plaintiffs.  Similar to *Reliance Steel*, the litigation occurred in a non-forum state – in this case, New York – and the contract that was at issue in that litigation was negotiated in that non-forum state.  Moreover, Plaintiffs have not provided any evidence showing that Defendants solicited Plaintiffs, physically visited Plaintiffs in New Jersey, or appeared in New Jersey during their representation of Plaintiffs.  As in *Reliance Steel*, then, this Court lacks specific jurisdiction over Defendants.

        3.      **Whether the Court Has General Jurisdiction Over Defendants**

In arguing that Defendants have sufficient contacts with New Jersey through activities

unrelated to the present action, Plaintiffs refer only to the activities of two of the Defendants, namely, Leeds Morelli and Mr. Gentile.  According to Plaintiffs, Leeds Morelli has been "sued in this state for representing 359 employees of Prudential Insurance, at least a half a dozen of Penguin Putnam employees, and more than a dozen New Jersey employees of Nextel."  (Pls.' Br. 11.)  As for Mr. Gentile, Plaintiffs claim that he was "contacting New Jersey attorneys as Leeds-Morelli's[] 'ethics counsel' regarding lawsuits pending in New Jersey Courts."  (*Id.* 10.)

### a. Leeds Morelli

In support of their argument that the Court has general jurisdiction over Leeds Morelli, Plaintiffs refer to three sets of documents:  (1) news reports from 2003 indicating that Leeds Morelli represented approximately 359 New Jersey residents in lawsuits against Prudential Insurance; (2) selected pages from a complaint in a lawsuit against Leeds Morelli, filed in the Superior Court of New Jersey, alleging that its attorneys represented certain New Jersey residents in claims against Penguin Putnam; and (3) affidavits from a case, litigated in a Colorado court, indicating that Leeds Morelli represented a number of New Jersey residents with claims against Nextel.  (Thyne Cert. Exs. G, I, J.)

None of these exhibits, however, support Plaintiffs' argument.  First, with respect to the 2003 news reports, they show only that Leeds Morelli represented a number of New Jersey clients – there is no indication, for example, that the lawsuits were filed in New Jersey courts.  (*Id.* Ex. G.)  Second, with respect to the complaint filed in the Superior Court of New Jersey against Penguin Putnam, the allegations made in that complaint do not constitute facts upon which this Court can make a finding of personal jurisdiction.  (*Id.* Ex. I.)  Third, the affidavits in

the Colorado case show only that Leeds Morelli represented a number of New Jersey clients in a lawsuit against Nextel. There is no indication that the Nextel action was litigated in New Jersey courts. (*See id.* Ex. J.) None of the evidence that Plaintiffs provide demonstrates that Leeds Morelli "purposefully avail[ed] itself of the privilege of conducting activities within the forum state . . . ." *Vetrotex*, 75 F.3d at 150 (internal quotations omitted). This evidence, without more, does not support a finding of personal jurisdiction. *See Reliance Steel*, 675 F.2d at 589 ("the facts required to assert [] 'general jurisdiction' must be 'extensive and persuasive'") (citations omitted).

### b. Mr. Gentile

In arguing that this Court has general jurisdiction over Mr. Gentile, Plaintiffs provide only a letter written by him stating that he is "ethics counsel to the law firm of [Leeds Morelli] . . . ." (Thyne Cert. Ex. H.) As with their argument concerning Leeds Morelli, Plaintiffs have failed to provide the "extensive and persuasive" facts showing that Mr. Gentile purposely availed himself of the privileges of conducting business in New Jersey. *Reliance Steel*, 675 F.2d at 589.

### C.     Plaintiffs' Cross-Motion for Leave to Serve the Defendants

Plaintiffs request, in their cross-motion, that the Court grant them leave to serve the SAC upon the Defendants who have not been properly served. The Court, having decided that it lacks personal jurisdiction over Defendants, must deny as moot Plaintiffs' cross-motion for leave to serve the SAC.

### III. CONCLUSION

For these reasons, Defendants' motions to dismiss are granted, and Plaintiffs' cross-motion is granted in part and denied in part. An appropriate form of order is filed herewith.

Dated: September 28, 2006

                                                 s/ Garrett E. Brown, Jr.
                                                 GARRETT E. BROWN, JR., U.S.D.J.